2023 IL App (1st) 211079-U

No. 1-21-1079

Order filed April 21, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 11818 |
| | ) | |
| RINNELL MALLORY, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Justices Lyle and Navarro concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We affirm defendant's conviction of being an armed habitual criminal where the trial court did not err in giving a jury instruction regarding the use of defendant's prior convictions.

¶ 2   Defendant Rinnell Mallory appeals his conviction as an armed habitual criminal. Mallory raises a single issue: did the trial court err in providing a jury instruction on the limited use of a defendant's prior convictions because the instruction improperly highlighted his prior convictions? For the following reasons, we affirm.

¶ 3   In July 2017, Detective E. Muhammad pulled over a black Maserati for obstructing traffic near a night club in Harvey, Illinois. He approached the driver, Rinnell Mallory, and asked for his

license and proof of insurance. Mallory handed the detective his driver's license but could not find proof of insurance. While Mallory searched for his insurance card, Officer Kant arrived to assist. When Mallory could not produce proof of insurance, Detective Muhammad asked him to turn off the vehicle and step out, informing Mallory that, under a village ordinance, the vehicle had to be towed for lack of proof of insurance. Mallory turned off the ignition but did not step out.

¶ 4     When he did not comply with the order several more times, the detective opened the driver's side door and immediately observed a gun on Mallory's left side, near his leg. Detective Muhammad verbally notified Officer Kant of the gun and drew his own gun. Detective Muhammad and Mallory fought over the gun as Mallory restarted the vehicle, which accelerated forward about 10 to 20 feet before colliding into two parked cars. Mallory eventually let go of the gun, and Detective Muhammad arrested him. Detective Muhammad transported Mallory to the Harvey police station and interviewed him. In a videotaped statement, Mallory admitted that the gun found in the vehicle was his. The State charged Mallory with being an armed habitual criminal. 720 ILCS 5/24-1.7(a) (West 2016).

¶ 5     At trial, Mallory testified to a wholly different version of the event: On the night of the arrest, Mallory borrowed a Maserati from a family friend and drove to the night club. The club had set up traffic cones for cars to drive into the parking lot, and Mallory joined the line of cars and waited to park. While Mallory sat in the vehicle, Detective Muhammad, in his police car, pulled up next to him and told him to get out of the line. Mallory drove out of the line, and the detective walked up to Mallory and insisted that he step out of the vehicle. When Mallory asked what he had done wrong, Detective Muhammad said, "I'm the cop, you listen to what I say, get the F out of the car." After explaining to the detective that the vehicle belonged to a family friend, Mallory

asked if he could reach for his insurance card in the glove compartment. As Mallory did so, Detective Muhammad grabbed him through the window, and Mallory's foot released the brake. As a result, the vehicle "went two feet and hit a little car." Detective Muhammad took Mallory out of the vehicle and handcuffed him. The officers then searched the vehicle for five to ten minutes and came over to Mallory with a gun, asking if the gun belonged to him. Mallory denied it. According to Mallory, at the police station, he again denied that the gun belonged to him.

¶ 6    The parties entered a stipulation that Mallory had two qualifying felony convictions for the purpose of proving an element of the armed habitual criminal charge. Both convictions were from 2005.

¶ 7    At the jury instruction conference, the State offered a modified version of Illinois Pattern Jury Instructions, Criminal, No. 3.13X (approved Oct. 17, 2014), instructing the jury on the use of prior convictions. The defense counsel objected to the instruction because it highlighted that Mallory has prior convictions. The trial court gave the instruction over the defense objection.

¶ 8    The jury found Mallory guilty of being an armed habitual criminal. 720 ILCS 5/24-1.7(a) (West 2016). The trial court denied Mallory's subsequent posttrial motions for a new trial and sentenced Mallory to 10 years' imprisonment. This timely appeal followed. Ill. S. Ct. R. 606 (eff. Mar. 12, 2021).

¶ 9    Mallory argues that the trial court erred in giving IPI Criminal No. 3.13X jury instruction because the instruction unduly emphasized Mallory's prior convictions and had a high probability of confusing the jury. "The sole function of jury instructions is to convey to the jury the correct principles of law applicable to the evidence submitted to it in order that, having determined the final state of facts from the evidence, the jury may, by the application of proper legal principles,

arrive at a correction conclusion according to the law and the evidence." *People v. Pinkney*, 322 Ill. App. 3d 707, 717 (2000). Generally, we will reverse a trial court's determination about what instruction to give only if the trial court abused its discretion. *People v. Rodriguez*, 387 Ill. App. 3d 812, 821 (2008).

¶ 10    Mallory concedes that he forfeited this issue by failing to raise it in his posttrial motion and seeks review under the plain-error doctrine. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007) ("[A] defendant forfeits review of any supposed jury instruction error if he does not object to the instruction or offer an alternative at trial and does not raise the issue in a posttrial motion."). Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013) provides that "substantial defects [in jury instructions in criminal cases] are not waived by failure to make timely objections thereto if the interests of justice require." Rule 451(c)'s exception to the forfeiture rule applies "when there is a grave error or when the case is so factually close that fundamental fairness requires that the jury be properly instructed." *People v. Hopp*, 209 Ill. 2d 1, 7 (2004). This rule is coextensive with the plain-error doctrine of Illinois Supreme Court Rule 615(a). *Piatkowski*, 225 Ill. 2d at 564; see also *People v. Herron*, 215 Ill. 2d 167, 175 (2005) (Rule 451(c) and Rule 615(a) are construed identically).

¶ 11    Under the plain-error doctrine, a reviewing court will review a "clear or obvious error" that is otherwise forfeited in two circumstances: "(1) where the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence; or (2) where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." *People v. McLaurin*, 235 Ill. 2d 478, 489 (2009). Mallory limits his request for plain-error

review to the closely balanced prong. The first step of this analysis is to determine whether an error occurred at all. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010).

¶ 12     Mallory contends that it was error to give IPI Criminal No. 3.13X as modified by the State. This pattern instruction relates to the admissibility of a defendant's prior conviction when this prior conviction is an essential element of the charged crime, as is the case here. IPI Criminal No. 3.13X, Committee Note (approved Oct. 17, 2014). When the defendant testifies at his trial, the instruction could be modified to inform the jury that the evidence of his prior conviction is admissible as substantive evidence as well as for impeachment purposes. *Id.*

¶ 13     Here, Mallory testified at the trial, but he could not be impeached by his prior convictions because the convictions were older than 10 years. See *People v. Montgomery*, 47 Ill. 2d 510, 516 (1971) ("Evidence of a conviction *** is not admissible if a period of more than 10 years has elapsed since the date of conviction ***."). The State removed reference to admissibility of prior convictions for impeachment purposes from the instruction and offered a modified version:

> "Ordinarily, evidence of a defendant's prior conviction of an offense may not be considered by you as evidence of his guilt of the offense with which he is charged. However, in this case, because the State must prove beyond a reasonable doubt the proposition that the defendant has previously been convicted of a qualifying offense, you may consider evidence of the defendant's prior conviction of the qualifying offense only for the purpose of determining whether the State has proved that proposition."

¶ 14     This instruction, as given, clearly and accurately conveyed the applicable law to the jury. In light of an additional jury instruction regarding the elements of the crime and the stipulated evidence of Mallory's two qualifying felonies, IPI Criminal No. 3.13X informed the jury how to

view Mallory's prior convictions in light of the crime charged. See Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013) ("Whenever [IPI Criminal] contains an instruction applicable in a criminal case ***, and the court determines that the jury should be instructed on the subject, the IPI Criminal instruction shall be used, unless the court determines that it does not accurately state the law."); *Hopp*, 209 Ill. 2d at 7. Given that Mallory could not be impeached due to the age of his prior convictions, the instruction limited the use of his prior convictions to determining whether the State had proved the element beyond a reasonable doubt.

¶ 15    Mallory's reliance on cases involving a different pattern instruction, IPI Criminal No. 3.13, is misplaced. IPI Criminal No. 3.13 concerns evidence of a defendant's prior conviction for impeachment, and it requires that the instruction be given "only at the request of the defendant" when there has been impeachment by prior conviction. IPI Criminal No. 3.13, Committee Note (approved Oct. 17, 2014). Thus, IPI Criminal No 3.13 is an instruction only available at the defendant's request—whereas No. 3.13X contemplates giving the instruction without the defendant's request, when the defendant does testify at trial. See *People v. Lewis*, 2014 IL App (1st) 122126, ¶ 16 (IPI Criminal No. 3.13X instruction given as suggested by the trial court). Accordingly, there was no error, let alone plain error, in giving IPI Criminal No. 3.13X to the jury.

¶ 16    Alternatively, even if there was error, the evidence in this case is not so closely balanced. Evidence may be closely balanced when a case turns on a credibility determination between conflicting testimony. *People v. Scott*, 2020 IL App (1st) 180200, ¶ 51 (citing *People v. Sebby*, 2017 IL 119445, ¶ 63). However, there is no "credibility contest" where, as here, one party's version of events is unrefuted, implausible, or corroborated by other evidence. *Id.* Officer Kant's testimony that he heard Detective Muhammad yelling "gun" and saw him and Mallory fighting

over the gun inside the vehicle corroborated Detective Muhammad's account. Photographs of the vehicles into which Mallory's vehicle collided during the struggle as well as Mallory's videotaped statement, which the jury heard, also confirmed the State's case. Under a commonsense approach based on the context of the case (*Sebby*, 2017 IL 119445, ¶ 53), the evidence was not closely balanced.

¶ 17 Accordingly, the trial court did not commit plain error, or any error, in giving the modified pattern instruction, IPI Criminal No. 3.13X.

¶ 18 The judgment of the circuit court of Cook County is affirmed.

¶ 19 Affirmed.